IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 19-417** |
| | : | **CRIMINAL NO. 18-026** |
| **JUSTIN DAVID MAY** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING

Defendant JUSTIN DAVID is an habitual fraudster with no respect for the law, a proven inability to both follow court orders and refrain from committing fraud, and a history of violent outbursts. He has pled guilty not once, but twice, in two separate cases pending before this Court – the first of which involved millions of dollars in actual losses and over $3,000,000 in intended losses. The second case only came about because, while free on bond after having pled guilty in the first case, defendant MAY abused this Court's trust in him and committed virtually identical fraud against additional victim companies, thereby violating his release conditions and causing hundreds of thousands of dollars in further losses. Following his indictment in the second case, on July 24, 2019, defendant MAY was ordered detained by Magistrate Judge Wells in both cases, based on his violation of the release conditions in his first case (which, of course, required him to refrain from committing additional crimes). Defendant MAY subsequently appeared before this Court and pled guilty in the second case as well, and has been in custody for the approximately four months since his arrest on July 22, 2019.

Defendant MAY now stands convicted in two separate cases before this Court and is awaiting sentencing, which is currently set for January 10, 2020 (*i.e.*, less than two months from now). He has filed a motion to be release pending his sentencing. In so moving, defendant

MAY ignores his egregious violation of his release conditions by committing more fraud while on bond – a violation that must result in his revocation of release if release conditions are to have any meaning.

Further, defendant MAY ignores the fact that, because he has already been convicted and is pending sentencing, there is a presumption of detention pursuant to 18 U.S.C. § 3143 and defendant MAY *must* be detained unless this Court finds by clear and convincing evidence that he is not likely to flee or pose a danger to the community. *See* 18 U.S.C. § 3143(a)(1). As set forth more fully herein, there is no basis for this Court to make the required finding by clear and convincing evidence.

Indeed, defendant MAY does not even attempt to establish the existence of such clear and convincing evidence, but instead argues that while incarcerated, he cannot get the medication (stimulants) he claims he needs, hence he should be released. This argument not only falls short, it is not even accurate. Defendant MAY does not *need* stimulants. He *wants* stimulants. FDC medical personnel have confirmed that there are numerous other medications that defendant MAY could be prescribed and that are routinely prescribed by the BOP to treat other inmates with the same symptoms, yet defendant MAY has refused to take any medications other than the amphetamines he wants.

For these reasons, as set forth more fully herein, defendant MAY's motion for release should be denied without a hearing.

I.  **THE FACTS**

   A.  **Defendant MAY's Fraud**

   Defendant MAY pled guilty to the charges that were returned on July 18, 2019, stemming from "warranty fraud," he committed against Lenovo and APC. At the time of the offenses charged in this second indictment, defendant MAY was on bond after having pled guilty to numerous offenses stemming from virtually identical fraud defendant MAY committed against Cisco Systems and Microsoft. It is now clear that, rather than obtaining a legitimate job while pending sentencing, defendant MAY apparently did exactly what he did in the first case except with new victim companies. The evidence in the second case consists of records showing defendant MAY's ordering of the items in question, shipping records showing the shipment to addresses tied to defendant MAY (including his home address) and to UPS stores frequented by defendant MAY, the testimony of UPS store employees who have identified defendant MAY as the person who picked up the fraudulently-obtained items, eBay records showing the items were sold through defendant MAY's eBay seller account, and PayPal and bank records showing that the proceeds from the sale of the items were deposited into defendant MAY's bank account. In addition, when he was arrested on July 22, 2019, defendant MAY made statements blaming the agents in this case for failing to get him a legitimate job.

   B.  **Likely Guideline Range**

   In the first case, defendant MAY's presentence report calculates his offense level as 27 based on intended losses of $3,449,509. This will increase once the losses in the second case are added to this amount, resulting in losses of more than $3,500,000, and hence an offense level of 29 (prior to any reduction for acceptance of responsibility, which the government would

oppose given his conduct in committing additional crimes). Defendant MAY is, in at least a Criminal History Category II, and his advisory sentencing guidelines range is, therefore, potentially 97 to 121 months.

Moreover, by his conduct of engaging in additional fraud while on pretrial release and while ostensibly cooperating with the government, defendant MAY is now in breach of the plea agreement he signed and will not be receiving any motions for downward departure or variance, and the government is no longer bound by any sentencing stipulations in that agreement.

### C. Criminal Record and Violation of Pretrial Release Conditions

A few months after pleading guilty in CR 18-026 (the first case pending before this Court), defendant MAY pled guilty on November 7, 2018 in the New Castle County Court of Common Pleas to terroristic threats based on his verbal altercation with the manager of a Toyota dealership. In a recorded call, defendant MAY threatened the manager that he would "beat your f**king ass with a tire wrench that's in the f**king trunk." The defendant was sentenced to six months of probation in that case.

In a similar incident in 2012, the defendant was convicted of criminal mischief and disorderly conduct in the New Castle County Court of Common Pleas on December 3, 2012, and was sentenced to 30 days' confinement (suspended), based on his getting into a fight at the New Castle Public Library during which defendant MAY told a library patron to go "f**k himself" and then struck the patron with a computer keyboard after the patron asked defendant MAY to get off of his cell phone because he was speaking loudly in the library. (Note: defendant MAY has also engaged in similar verbally abusive conduct with UPS Store employees as part of

his offense conduct in his second case pending before this Court, who report that they remember defendant MAY very well because he frequently yells and curses at them if they do not wait on him quickly enough.

Defendant MAY's criminal record also includes a June 9, 2019 (*i.e.,* while on pretrial release in his first case pending before this Court) incident in Delaware in which he was stopped by the police for driving with a suspended license and expired tags, a 2012 case from New York involving petit larceny and criminal possession of stolen property that shows no reported disposition, and a 2010 case from Boston for larceny and receiving stolen property that was ultimately dismissed.

Defendant MAY's has, therefore proven himself unable to follow rules. This inability is also reflected in the at least 9 incidents that we can prove that he violated his pretrial release terms in CR 18-026 by travelling to states other than Pennsylvania (EDPA) and Delaware without getting prior approval form his pretrial services officer. For example, on July 16, 2019, defendant MAY received a speeding ticket in New Jersey, despite having never requested prior approval from his pretrial services officer. When questioned by his pretrial services officer about this, defendant MAY claimed that he made a wrong turn and ended up in New Jersey. Defendant MAY's bank records show that he made debit card purchases in New York, New Jersey, Maryland, and Virginia, on the following dates, and his pretrial services officer has confirmed that he never asked for permission to travel outside of EDPA or Delaware on these dates:

1. 11/30/18 – Brooklyn, NY
2. 12/03/18 – Brooklyn NY, Ridgefield NJ
3. 12/05/18 – East Brunswick NJ, Cherry Hill NJ

    4.    12/14/18 – Milltown NJ, Brooklyn NY, Staten Island NY

    5.    01/09/19 – Baltimore MD, Leesburg VA

    6.    01/10/19 – Owings Mills MD

    7.    01/17/19 – Richmond VA, Midlothian VA

    8.    02/17/19 – Baltimore MD.

Clearly, defendant MAY was just doing as he pleases while on pretrial release, driving up and down the east coast, without requesting permission to do so. His criminal history and his record of non-compliance while on pretrial release prove him to be a flight risk.

    D.    **Danger**

Defendant MAY has also proven himself to be a danger to the community. As his criminal record reflects, he has two convictions for using violence or threatening to use violence. He has a clear anger management problem. The evidence in this case will show that defendant MAY yells and curses at UPS employees if they do not wait on him fast enough. His actions in engaging in new criminal conduct while on release, coupled with his past violations of his release conditions and history of making threats and using violence reflects that he remains a danger to society.

    E.    **Lack of Employment**

Defendant MAY refused to obtain a legitimate job the entire time he was on pretrial release. Instead, he supported himself by fraud.

**II.**    **CONCLUSION**

When all these factors are viewed in light of the substantial sentence defendant faces if convicted, it is clear that defendant MAY cannot show by clear and convincing evidence

that he is not a flight risk or a danger to the community. When someone is granted the courtesy of remaining on bond pending sentencing after pleading guilty to operating a $3.5 million fraud scheme, it is incumbent upon that person to honor the trust that the Court placed in him. Defendant MAY did not do so, and instead committed more fraud while free on bond. Such actions must have consequences if pretrial release conditions are to mean anything. Simply put, there is no basis upon which to release defendant MAY pending sentencing.

WHEREFORE, the government respectfully submits that defendant MAY's its Motion for Release Pending Sentencing should be denied.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

_____
MICHAEL S. LOWE
Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Opposition to Defendant's Motion for Release Pending Sentencing was served by email on

Natasha Taylor-Smith
Federal Community Defender Office
601 Walnut Street
Suite 540 West
Philadelphia, PA 19106
Natasha_Taylor-Smith@fd.org

/s/
MICHAEL S. LOWE
Assistant United States Attorney

Date:  November 18, 2019